## Commonwealth v. Balanow

*Scott M. Olin, deputy attorney general,* for the commonwealth.

*Gerald A. Mandlowitz,* for defendant.

SUBERS, *J.,* June 6, 1988 — This is an appeal of the commonwealth, Department of Transportation from our order sustaining petitioner's appeal from the department's suspension of his driving privi-

leges. The facts may be briefly stated as follows: On May 10, 1987 at approximately 1:48 a.m., Officer Edward D. Kropp of the Spring City Police Department observed petitioner, Anatoly Balanow, driving erratically on Bridge Street in Spring City, Chester County.* Petitioner crossed the bridge into Royersford, Montgomery County and had difficulty maneuvering his vehicle. Officer Kropp stopped petitioner, approached petitioner's vehicle, and asked for identification. As he examined petitioner's identification, Officer Kropp noticed an odor of alcohol about petitioner and observed that his eyes were "glassy". Petitioner failed three field sobriety tests. Officer Kropp then placed him under arrest and informed petitioner of the penalty for refusing to submit to a chemical test and asked if he would consent to a blood test. Petitioner agreed and accompanied Officer Kropp to the hospital.

While waiting for the test Officer Kropp advised petitioner of his *Miranda* rights and asked him to sign a "rights sheet," described as a form stating that petitioner had been advised of his rights. Petitioner initially refused to sign the "rights sheet" but relented when told that his conduct could be construed as a refusal to submit to a chemical test and that he would lose his license for one year. Defendant signed the sheet. Although Officer Kropp stated that he only asked petitioner once to submit to a blood test it appears that there was some bantering between the two, wherein petitioner said he "was only kidding" and that he would take the test. De-

---

* Officer Kropp testified that he is a full-time officer with the *Pottstown Police Department* and part-time with the Spring City Police. On the evening in question Officer Kropp was on duty in Spring City when he observed petitioner driving in an unsafe manner. As a police officer, he was under a duty to determine whether petitioner was intoxicated.

spite this, petitioner was ready and willing to submit to a blood test until he was presented with a release of liability form from Phoenixville Hospital. When asked to sign the release defendant flatly refused. On May 28, 1987, an official notice of suspension for failure to submit to chemical analysis pursuant to 75 Pa.C.S. §1547 was mailed to petitioner effective July 2, 1987. Petitioner filed his petition for appeal on June 25, 1987. A hearing on petitioner's appeal was held before the undersigned on January 11, 1988. By order of this court on March 9, 1988, we sustained his appeal and directed the commonwealth to reinstate petitioner's driving privileges. The commonwealth appeals.

## ISSUE

Whether a motorist's driving privileges may be suspended pursuant to 75 Pa.C.S. §1547 (for failure to submit to chemical analysis) because he initially declined to take the test although he later assented and the test would have been performed had he not been required to execute a hospital release of liability.

## DISCUSSION

In *Maffei v. Department of Transportation,* 53 Pa. Commw. 182, 416 A.2d 1167 (1980) our Commonwealth Court addressed the issue of whether a motorist's driving privileges may be suspended under 75 Pa.C.S. §1547 because he refuses to execute a release of liability for the hospital. In *Maffei,* the motorist involved was one of the drivers in a three-car accident. An officer at the scene observed Maffei acting in what appeared to be an intoxicated manner. When the injured Maffei was taken to the hospital for treatment he was placed under arrest for

driving under the influence and was asked to submit to a blood test. Maffei agreed. However, when the hospital technician asked Maffei to sign a hospital form that was described as a release of liability, Maffei refused to sign the release and the test was not conducted. Maffei's operating privileges were suspended for refusing to consent to chemical analysis, pursuant to section 1547(b) of the Vehicle Code.

Section 1547 reads, in pertinent part:

§1547. "Chemical testing to determine amount of alcohol or controlled substance.

"(a) *General Rule* — Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

"(1) while under the influence of alcohol or a controlled substance or both; or

"(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

"(b) *Suspension for refusal*—

"(1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is required to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

"(2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing. . . ."

In reading section 1547, the *Maffei* court held that a motorist's duty to assent to a blood test can not be burdened by a requirement that he execute a signed waiver of liability releasing the hospital conducting the test of all future liability. The court stated that requiring a motorist to sign a form devised by a hospital as part of the blood test procedure for which the motorist's consent is required is not what is mandated by section 1547. The court stated that that section provides that "a motorist is thus deemed to consent to a blood test, *not* a blood test accompanied by a signed waiver of liability." 53 Pa. Commw. at 185, 416 A.2d at 1169. (emphasis supplied) The court continued by saying that a license suspension under section 1547 is a sanction for refusal to submit to a chemical test for blood alcohol content; it is not a sanction for the refusal of a test linked to the execution of a release of liability.

Petitioner contends that *Maffei* applies to his case because he consented to a blood test but was requested to first sign a release of liability before the test was conducted. The commonwealth does not dispute that the form petitioner was requested to sign was a release of liability for Phoenixville Hospital. The commonwealth's position is that although petitioner eventually agreed to take the test when asked a second time, he had already refused the test and any subsequent assent is irrelevant. We do not agree and have concluded that *Maffei* applies in the instant case.

It is true, as the commonwealth contends, that a subsequent assent to chemical testing does not vitiate a prior refusal. See *Department of Transporta-*

*tion v. Cohen,* 99 Pa. Commw. 466, 512 A.2d 1365 (1986); *Appeal of Miller,* 79 Pa. Commw. 648, 470 A.2d 213 (1984) A review of the cases regarding subsequent assent after an initial refusal involves factual situations wherein the *motorist* asks to take the test after the officer has concluded that there has been a refusal. In the instant case, Officer Kropp asked petitioner a second time if he would submit to a blood test after reminding him of the penalties for refusal. Petitioner then agreed to submit to the test. On these facts, this case is distinguishable from *Cohen, Miller,* and the line of cases holding that a subsequent assent does not eliminate the effect of a prior refusal.

In *Commonwealth v. Wege,* 368 Pa. Super. 181, 533 A.2d 776 (1987), our Superior Court recently held that the police are not prohibited by the language of section 1547 from extending a second and third opportunity to submit to a breathalyzer test. Although *Wege* involved the admissibility of test results in a prosecution for driving under the influence rather than a license suspension, this court finds guidance in the interpretation of section 1547 provided by the *Wege* court. Citing *Appeal of Miller, supra,* the court noted that once an accused refuses to submit to chemical testing, a subsequent assent to the test need not be accepted. In the case at bar the subsequent assent was accepted and Officer Kropp was prepared to go forward with the test. Clearly the police are not required to spend time "either cajoling the defendant or . . . waiting to see if the defendant will change his mind." *Wege, supra,* (quoting *Appeal of Miller,* 79 Pa. Commw. at 650, 470 A.2d at 214). However, where the police do more than is required by law and ask a motorist a second or third time to submit to a chemical test *and* he agrees, the test results are admissible.

Since there are no cases addressing the precise issue raised by the commonwealth in this case it is one of first impression. This court is persuaded by the reasoning in *Maffei* but is also concerned about the absurd result if we were to accept the commonwealth's position. If a release was not presented to petitioner in the instant case the test would have been conducted. Under *Wege* the results of that test would be admissible against petitioner in the prosecution for driving under the influence. However, taking the commonwealth's argument to its natural conclusion, there would still have been a refusal. Following the commonwealth's line of reasoning it would appear that petitioner's license would have to be suspended under section 1547(b) for initially refusing to submit to chemical analysis even though he eventually did submit to chemical testing in response to the officer's repeated requests and warnings of the penalties for refusal. Because it is clear to this court from Officer Kropp's testimony that petitioner would have taken the blood test had he not been requested to sign a release, this case falls within the purview of *Maffei*.

The commonwealth also argues that petitioner failed to offer the hospital form into evidence and that he failed to sufficiently demonstrate a nexus between the form and his refusal to take the test. As in *Maffei*, there is no need to offer the hospital form into evidence because the testimony confirmed that the form was a release of liability. Furthermore, we are convinced that petitioner's refusal to take the test was based on the fact that he was asked to sign a release. Despite petitioner's bantering with Officer Kropp, he twice stated he would take the test and willingly accompanied the officer to the hospital. Only when presented with a release form did petitioner refuse to take the test. For these reasons we

have concluded that petitioner did not refuse to submit to chemical analysis within the meaning of section 1547 but rather refused to sign a waiver of liability and was penalized for it. Under *Maffei*, a license suspension in this situation is impermissible.

## CONCLUSION

In light of the foregoing analysis, our order of March 9, 1988 sustaining petitioner Anatoly Balanow's appeal and directing the commonwealth to reinstate his operating privileges was proper and should be affirmed.